and we'll hear from Mr. Ponsky representing Ms. Wiggins. Thank you, Your Honors. Before beginning, I wanted to express gratitude for being able to argue before this court. I've been blessed to be able to do it on a number of occasions, and every time it's a memorable experience, and it's definitely an honor to be before this court. It's a pleasure and a blessing to have you. And I also want to do something a little bit odd, which is I want to express gratitude for the judge that ruled against me in the bankruptcy court. And that's important to me, and I want this court to recognize that although I disagree with her ruling in this case, I have a very high regard for Judge Jernigan. We are blessed in Dallas to have three outstanding bankruptcy judges. I've been practicing bankruptcy law there for 34 years, and we have an amazing group of three judges. And so I want to express gratitude to Judge Jernigan because although I lost in front of her, which isn't the first time and won't be the last time, she is a very caring, very intelligent judge who really pays attention to things. She's got a very thorough opinion in this case. Very thorough, and it's very like her to want to reach the right decision, and so I did want to express that. And another thing that I'd like to do is before getting into what can be a very hyper-technical analysis under these cases and under the statute, I wanted to go up 40,000 feet for just a minute and talk about, in my experience, the three things that I see in fraudulent transfer cases just to sort of set the table for what I think we're dealing with with respect to fraudulent transfer cases. The three things that I see in fraudulent transfer cases is, first of all, and this is in an actual fraud case, you see fraud. And if you go back to the purpose of these fraudulent transfer statutes going back to the Elizabethan era, the 1600s when these statutes came about, these were statutes that were designed to remove situations where a debtor who didn't have enough money to pay creditors had engaged in some fraudulent conduct. So fraud is definitely something we see in these cases. The second thing that we see, Your Honors, is, and this is in our constructive fraud cases, we see a lack of reasonably equivalent value. Or in other words, we see a situation where a debtor has transferred assets and has not gotten the correct amount in return. So in other words, somebody that has a number of creditors has an asset that's worth $1,000 and transfers it for $10. And in that situation, we have a lack of reasonably equivalent value. The third thing that we see in these cases, and this is true in both actual and constructive fraud cases, we see an asset that is transferred that is not otherwise exempt from creditors. So in other words, we see an asset being transferred that is available for creditors from which creditors can be paid. Now, applying those three things to this case, because I think this case provides an unusual set of facts, a unique set of facts. And one of the reasons we have an unusual and unique set of facts in this case is because those three things that are in all fraudulent transfer cases are not, none of those three things we have in this case. In this case, we have a stipulation from the trustee that was made in open court, cited to in our brief, and the bankruptcy judge clearly picked up on this. We have a stipulation that there was no fraud in this case, no fraudulent intent in this case. No question about that. We have a stipulation from the trustee that was made in open court. Again, no question about it. It's cited in our brief with the exact language. There was a stipulation that reasonably equivalent value was given for the transaction in question. And third, Your Honors, we have, and this is a really unique and unusual situation, we have an asset that was transferred that's alleged to be a fraudulent transfer with no fraud that was an exempt asset. And when you look at the jurisprudence of fraudulent transfer law throughout the last 400 years, what we have being transferred is assets that are available for creditors. In this case, there's no question that the transaction that we're talking about is the partitioning of an exempt asset. So the moment before the partition, you have each person, each spouse, having an undivided one-half interest in community property in an exempt asset, their homestead. And the moment after the transaction, you have these same two spouses having the same one-half undivided interest, but instead of in community property, it's in separate property. But what doesn't change, pre-partition versus post-partition, is that that asset is an exempt asset before and it's an exempt asset afterwards. Counsel, you presented us with a construct that is no doubt helpful in us understanding, but the determination by the bankruptcy court was that the effect of this or the intent of this, as well as the effect, was to hinder or delay, not to fraud, which is just one of the three options, hinder or delay creditors. And the definition in some case law is acting improperly to make it more difficult for a creditor to collect the debt. Badges of fraud, whatever, we're not dealing with that. It seems to me that this is really a matter of definition that we're dealing with here, and that's what you're trying to walk us through, no doubt. And the definition is that by partitioning this and trying to get half of the equity outside of the bankruptcy estate, if that, in fact, was improper, well, I'm doing it backwards, that was intended to keep creditors from accessing that much of the equity and to label it, hinder or delay, it seems to me is a fair characterization of what happened. So, I mean, at that level, it's just one thing to say that you had the legal right, you kind of had the legal right to do what you did at your advice and other people's advice and the husband as well. But something else to say that even though there's a legal right to partition a homestead, when it's done at this time, an hour before the bankruptcy, if that timing is correct, it does seem to me to have the effect of hindering delay. So, I mean, can you leave sort of your construct and help me with any case law that is helpful to you to say this is the wrong way to define the phrase hinder or delay? Yes, and it's a great question, Your Honor, and I didn't mean to give short shrift to the actual definition of fraudulent transfer. Clearly, it's important that the language of the statute, the plain meaning of the language of the statute, is written in the disjunctive rather than in the conjunctive. So, hinder and delay seem to be enough. I will tell the court there is case law that, and in fact, the Eighth Circuit Court of Appeals, and this case, it's the Addison case cited, and it's in Judge Jernigan recognizes this in her opinion that she wrote the first opinion, which I call the fraudulent transfer opinion, as opposed to the second opinion, which I call the distribution opinion. But in the fraudulent transfer opinion, Judge Jernigan recognizes that there is a split of authority. There are cases that hold that you have to have fraud, even though the statute is written the way that it is, to Your Honor's point. I believe that if this court rules to affirm Judge Jernigan, that would be a split in the circuits because the Eighth Circuit in that Addison case has held that hinder and delay is not enough without fraud. I do, however, recognize— You haven't raised that as a separate issue, have you? I'm sorry? Have you raised that as a separate issue in this case? We—I'm not sure we drilled down to that detail, but we have raised the issue that there should not be—hinder and delay should not be enough without fraud. We have raised that issue. So I think—and I don't think that we cited specifically to the Addison case,  I want to—because your time is running, I want to just ask you two points because I want a response from the appellee. I'm sure they would have replied anyway. I was surprised that the bankruptcy judge raised this Section 363J issue, sua sponte, at the first bankruptcy trial. Were you the lawyer for the Wiggins when they did this partition agreement shortly before Chapter 7? Yes, Your Honor, I was. And the bankruptcy judge is the one that raised that issue, not you. And so I was surprised that the bankruptcy judge allowed a post-trial motion to reconsider where you raised the issue. She had raised sua sponte, and she dealt with it. But in dealing with that, when did you raise this point that she satisfied subpart 363H about the unique circumstances of a sale? I didn't see it until your reply brief. Did you bring this up before then? I'm going to be real honest with you and tell you I'm not— I hope you're going to be real honest with me about everything. Yes. So be real honest with me. Yes, I don't recall if we raised it in our initial brief or not. We clearly raised the issue that Mrs. Wiggins was entitled to a distribution. And frankly, from my standpoint, Your Honor, I don't think it matters whether it's under 363J or 363E, which requires adequate protection, or if it's under Section 105A, which basically says that the bankruptcy code has to effectuate basically the provisions of the law. The reason that I don't think it really matters, Your Honor, is that I think Mrs. Wiggins— as a part of my argument, I was going to show the court why, but I think she has an entitlement to these homestead proceeds that doesn't even necessarily need a bankruptcy code section to allow her to pull it out. For example, a secured creditor obviously is entitled to a secured creditor's secured portion of the proceeds of a property that's sold in bankruptcy. There's no bankruptcy code section. 363H, J, and K do not deal with or say that a secured creditor gets to have their proceeds taken out before the money goes to unsecureds, but that is the law. Taxing authorities get to have their money taken out on ad valorem property taxes before creditors. There's nothing in 363H or J or anything that gives that entitlement. It is axiomatic that if a party has an interest in property, they get to get that property out. So I am not—and I'm not saying you shouldn't be, but I'm not so much hung up on which section of the bankruptcy code it is because, to me, if she has an entitlement to that part of that asset like a secured creditor would or like a taxing authority would, she should be able to get that property out. Well, why doesn't the Kim and Thal case already get us beyond the point that you're trying to tell us? It seems to me in both of those cases, one pre, if this is the way it's pronounced, BAP-SIPA and the other post, that you have—that the estate is entitled to the full amount of the homestead. Actually, Your Honor, the Kim case, that was the holding in the Kim case, but the reason the court said in that case, and actually that was my case also which I argued to this court. Good for you. It was Judges Higginbotham and Owen and Katerina Haynes. And in that case, Your Honor, the holding was that no proceeds would go to the spouse, but it was because no evidence was put on as to what she was entitled to. Now, since I lost that case too, I learned from that loss that we had to put on evidence in this case as to how much of the distribution the non-filing spouse should get, which is why we hired an expert witness who is an actuary, and that expert witness who is an actuary did it exactly the way that this court has required it to be in the Harris case, which is cited in our materials. But doesn't Kim and Thal, ultimately when both are over, say that what you're looking at is not an economic interest in the non-filing spouse's homestead claim? At best, it's when you finish looking at what amount a filing creditor is entitled to, $150,000 reduced in this case. What you're looking at is whether the effect is to result in a confiscation. I forget what the modifying word for that is. Gratuitous confiscation. Thank you. How does that apply to the argument you're now making? Okay. And it's a great point. And you're exactly right as to what Thal said, which is that there has to be a gratuitous confiscation, which means that the spouse was not compensated. Now, the way Judge Jernigan got around that in this opinion is she said, well, we don't know that Mrs. Wiggins was not compensated by Mr. Wiggins' receipt of $130,000. But we do know that because what we know is that each spouse in a bankruptcy case under Section 522M is entitled to separate awards or separate receipt of exempt property. So if she had filed bankruptcy, she would have been entitled to another $155,000. There would have been two entitlements. And so what we know from that is that the entitlement that Mr. Wiggins received was his separate $155,000, and that if she had filed bankruptcy, she would have received $155,000. It's interesting, Your Honor, because the bankruptcy code does not give an entitlement to $155,000. It caps the state law entitlement to $155,000. And I think the bankruptcy judge, with due respect, got this wrong. And she says four times in her opinion that Mrs. Wiggins should have filed bankruptcy. In fact, at one point in her opinion, she puts it in bold and italics that Mrs. Wiggins should have filed bankruptcy and she would have been entitled to $155,000. And, Your Honors, I respectfully argue that that's not a correct view of the law. The entitlement doesn't come from the bankruptcy code. The entitlement comes from the state. Texas Constitution says that each spouse has a constitutional right to the homestead property. That right, which is unlimited under Texas law, is capped by the bankruptcy code. The bankruptcy code doesn't grant the $155,000. The bankruptcy code caps the unlimited state exemption to $155,000. So, in other words, if the Wiggins had filed bankruptcy in New Mexico, they wouldn't have gotten $155,000. They would have gotten $30,000 because that's all the state gives. So, to me, in thaw, when it says that if you don't get anything, there's a gratuitous confiscation, I think that's the exact case we have here. We have a gratuitous confiscation because Mrs. Wiggins got nothing. Mr. Wiggins got his $155,000, essentially, and she's not entitled to his portion. She would have, if she had filed bankruptcy, she would have gotten her own portion. And so I believe she has her own entitlement to the, and it's not capped in bankruptcy because she didn't file bankruptcy. Do you have any further questions? No. Any further questions? That's all. Thank you. Thank you, sir. You've saved some time for rebuttal. Mr. Elmquist. Good morning, Your Honors. David Elmquist on behalf of Diane Reed, the trustee and appellee in this appeal. Your Honors, there are two basic questions presented by this appeal. One is a question of fact and one is a question of law. The question of fact is simply this. Did the debtor, in entering into the partition agreement, intend to hinder or delay his creditors by entering into that agreement? And that question was answered by the debtor at trial. Well, counsel, what do you say to the argument that there is a circuit split about to occur if we say hinder and delay can be freestanding and you don't need fraud? Your Honor, you're asking me to address the split of authority? Yeah. Or my interpretation of that? Is that actually where we're going to be? I think that the statute, by virtue of how it's written, is clear that it is disjunctive. Well, you're giving me a good argument to answer your interpretation, perhaps. But will there be a circuit split? Did the Eighth Circuit, on facts and situations similar to this, say that all three of those elements must be satisfied or at least that fraud must always be present? Your Honor, I'll confess to say I don't know what position the Eighth Circuit has taken on that issue. I think the law in this circuit. Well, the Addison case, I mean, I can't say I can cite it chapter and verse either. You're not quite familiar enough with the Addison case to say, or is that not really the authority? I'm not familiar enough with the Addison case to say whether this would give rise to a circuit split. But from the standpoint of how this Court is supposed to look at the bankruptcy statute in construed, I think there's no question that, written in the disjunctive, a fraud and transfer action can be brought based upon an intent to hinder or delay or defraud. And it's clear from the evidence that was presented that there was an intent to hinder Mr. Wiggins' creditors by entering into this agreement. I asked him at trial, and this is quoted on page 10 of my brief. I asked him at trial, and is it true, Mr. Wiggins, that one of the reasons why you felt that it was the right thing to do to enter into the marital property agreement is your wife was not obligated on your business debts and you didn't feel that her interest in the community estate should be available for the payment of your creditors' claims? Yes, was his answer. I went on to ask, so the marital property agreement then was entered into with the purpose and intent of keeping your creditors from being paid on what you believe to be your wife's interest in the property? His answer, I guess it just depends on what side of the coin you're on, but yeah, from your perspective. So from the standpoint of the interest of creditors and from the standpoint of what this trustee is supposed to protect in terms of transfers made by a debtor, this debtor intended to prevent his creditors from getting paid out of what he thought should be protected, which was his wife's interest in the homestead property. Well, we're, of course, this is reviewed for clear error, finding a fact. But the global question, or you look at it, it's a community property estate. She was entitled to one half of the home, undivided interest. But let me finish. I'm sorry. And so a few hours before he filed for bankruptcy and his creditors were going to get what he had, she said, well, I'm out of here. I don't want my half of the house being used to pay your debts, for which I have no responsibility. And so from just an equitable or a fairness point, or as counsel said, looking at it from 40,000 feet, you've got to say, well, how is that hindering or delaying? She's just getting her ‑‑ she's just taking her money and running before all the creditors descend on her husband. And, Your Honor, I think the answer to that is what the laws provide from the standpoint of what the bankruptcy code says. The debtor chose to file a bankruptcy case. The bankruptcy law says when he files a bankruptcy case, the entire community estate, if it's subject to the joint ‑‑ I know that. But he divided the property before he filed for bankruptcy. Sure, he did. But he did so with the intent of preventing his creditors from being paid. And, you know, the fact that he ‑‑ No, she did so because she didn't want her money being used for creditors for whatever reasons her husband was in debt. I understand, but the issue is the debtor's intent. And the debtor's intent here was clearly to prevent his creditors from being paid. So there may well be, at the end of the day, for this court, in considering this, a policy consideration. But the law is, I think clearly the law is, that the statute's written in the disjunctive. The evidence is very clear that there was an intent to hinder by preventing his creditors from being paid. And that's all that's required under 548A1A. So we've established the basis for avoidance. So what does avoiding this partition agreement mean? It means that the entire property, that the partition is a nullity, and that the entire homestead property is property of the bankruptcy estate. And so the bankruptcy court found. That meant that the property, subject to a limited exemption claimed by the debtor. And so the bankruptcy court authorized the sale of the property. Then we come to the question in the second portion of this adversary. And there was, to address this issue of raising the 363J rights and entitlement to proceeds, that was addressed during the course of the first trial. It wasn't presented in terms of any pleadings. There was a separate motion filed, as I recall, by debtor's counsel to address that issue. And I think from a procedural standpoint, Judge Jernigan felt it was simply easier to bring all that into a single. And I suppose part of it was the request, too, by the parties, as I think about it, to bring all of that into one adversary proceeding so we didn't have two appeals going, one from the avoidance action and one from the issue of the entitlement to the proceeds. On the question of the entitlement to the proceeds, counsel suggested to this court that you can just simply look to a grab bag of statutory provisions in the code, including 105 for the proposition that, on some basis, Ms. Wiggins is entitled to some of the proceeds from the sale of this homestead property. That's not the way the bankruptcy code works. If there's no provision in the code for any kind of relief or payment to Ms. Wiggins, then she's not entitled to compensation. This court left open the question in Canvas whether or not 363J, in the circumstance of the sale of a homestead property, provided for any kind of compensation to the non-filing spouse. It's clear to me, again, in a careful reading of 363J, that there is no provision in that section for compensation to a non-filing spouse where the interest at issue is a community property interest. It is very clear, and the Hendrick case that I cite in the brief, I think provides a very good explanation of how 363J operates. And the court in Hendrick explained that 363J and F only apply in the case where there's an interest in property by an entity other than the estate. Ms. Wiggins, by virtue of the fact that the court had nullified the partition agreement, had no interest in the homestead property other than this prophylactic right that exists under Texas law to prevent a forced sale. Well, this sale was not a forced sale. This sale was a consensual sale that had been initiated, actually, by the debtors when they filed the first motion in the bankruptcy court to sell this house. They were seeking to sell the house a month before they filed for bankruptcy, weren't they? Yes, Your Honor. They had a contract pending, and they then filed with the contract that they'd entered into pre-petition. They filed a motion to sell. The trustee took exception to that, saying that the homestead property is still property of the estate until there's a termination of the exemption right. So we'll thank you very much. We'll file the motion to sell, and the property was sold by consent of the parties. And then there was the issue, of course, of what the parties were entitled to, estate versus the debtor and the debtor's wife with respect to those proceeds. There's simply no provision in 363 at all for compensation to a non-debtor spouse with respect to a community interest such as this when that property is sold. There is a recognized right of first refusal under 363i, but 363j speaks to sales in which 363g or 363h apply. g clearly doesn't apply here. I don't think anyone is saying that dower curtsy rights apply in this instance. 363h only applies in the case of co-tenancies or joint tenants. This is not a joint tenant or co-tenancy interest, despite counsel's arguments to the contrary. Well, there's an odd statement perhaps under your argument in Kim by Judge Owen that refers to 363h co-tenancy, and she points out her former court, Supreme Court of Texas, has held on different facts when it seems to be a third party has an interest in a homestead as a co-tenant. But it's just odd the way it's put in that opinion. It seems to me suggesting by an expert on Texas law who wrote the opinion that there may be some aspects of co-tenancy between spouses in the homestead situation. How do you read what's going on in Kim in that paragraph? Yeah. I read it, Your Honor, by looking at the cases that were cited in Kim, the Texas cases that were cited in Kim for that proposition. And those two cases are cited in my brief at page 20 in footnote 63. They're Laster v. First Huntsville Properties and Sayers v. Pyland, both Texas Supreme Court decisions. And in both of those instances, and the reason why the Fifth Circuit in Kim was referring to co-tenancy in the context of a homestead property is that at one point it was homestead property between husband and wife, but at the point in time when the property interests were at issue in the actions that were filed, there was no longer an interest owned by husband and wife as a married couple. In Laster, the co-tenancy interest was between the homestead claimant, the husband who was a homestead claimant and the wife who held a mortgage interest in the debtor's homestead interest. So in other words, we're talking about what type of interest exists after divorce when a husband and wife partition or separate, divide their interest by virtue of that divorce into these two pieces. In that context, yeah, it's a co-tenancy. It's not a homestead because they're no longer married. Similarly, in the Sayers case, the co-tenancy was between the wife as a homestead claimant and the executor under the husband's will. Again, at one point it was a homestead property, but at the point in time when these property interests were being considered in court, there was no longer a husband and wife interest being held or claimed. So I think that was the context in which the Kim court was talking about co-tenancy with respect to a homestead property. Well, looking at Judge Jernigan's opinion, she goes through the case law that you talk about, Kim and Thaw and whatever else that she found relevant. She ultimately determined that there was no part of 363 or any other part of the bankruptcy code that would give a clear entitlement, but she did read our case law to say that there still is an unsettled issue that maybe we need to settle in this case about what the non-filing spouse is entitled to once you finish looking at what the filing spouse has gotten as the exemption. So how do we work with that? I mean, I hate to punt every time this issue comes to us. This is a pretty good case, it seems to me. This issue is certainly presented or argued in the district court with that case law in front of them. I think this is an excellent case for this court to nail down finally that there is no entitlement to any compensation in this circumstance simply because the homestead interest at issue has, based upon clearly established Texas law, no economic value. But it does have, it is an interest. It is an interest and it has value, but the value it has, Your Honor, is a value to protect it from forced sale. It is not an interest that translates into monetary value simply because I at one point had the right to keep this house from being sold. Would you say this is a harder case for the non-debtor because it wasn't a forced sale? I think this is a much harder case for the debtor because it was not a forced sale because in that circumstance, you could argue, being deprived of the right to occupy the homestead does have a value that can be translated, and I think this court has suggested would indeed, and I think maybe the Rogers case, the Supreme Court's decision as well, would indicate that a forced sale of a homestead where the spouse who does not have the debt or is not causing that forced sale to occur should be compensated for being booted out of her home. But that wasn't the case here. In this case, the debtors chose to sell the property and they chose to enter in a partition agreement to attempt to maximize the recovery they would obtain from that sale even with the debtor filing bankruptcy. But saying that there is some value to the interest does not equate to there being an economic value that this debtor is entitled to. And Mr. Epronsky makes much of the fact that Judge Jernigan makes much of the fact that the non-debtor spouse could have protected her interest by also filing a bankruptcy case. That's how the law protects the non-debtor spouse. Go ahead and file and get your protection as well through your exemption. And I think it is totally fair and reasonable in these circumstances for this court to find compensation that you're entitled to is the compensation you receive with respect to your community property interest and what your husband claimed is exempt. If you wanted anything more than that, then you could have filed too and got your own exemption. And that should be the limits for any kind of value being ascribed to the interest that the appellant had in that homestead property given the fact that the community property was property of the bankruptcy estate and her interest was simply a prophylactic interest to prevent a sale which she consented to. Would you circle back to the first issue of whether the partition was invalid? It was on the eve of bankruptcy. It was an effort to validate, to protect the interest the spouse has in the homestead in some way. Does the, I forget what the bankruptcy section is, does the 1,215-day rule have any application to what happened to that partition or is that irrelevant? Well, with respect to the partition, it is irrelevant, Your Honor, but it certainly had a bearing on entering into the partition agreement because as the record clearly reflects, the debtor and the appellant, Mrs. Wiggins, knew based upon the bankruptcy advice they had received, they knew, well, first of all, they knew that there was substantial equity in their home. They knew that they wanted to sell it and that they would realize something in the order of $500,000 or $600,000 in the sale of the home. They also knew that by virtue of, well, the second thing they knew is that Mr. Wiggins was in deep financial distress and he was intending to file bankruptcy, so they consulted with the bankruptcy attorney. By virtue of that, they also knew that under the bankruptcy laws, because they had acquired this home within the 1,215 days that is addressed in Section 522P, their homestead exemption, his homestead exemption, was going to be limited to the statutory maximum, which was $157,000. That meant that was the most that they could hope to realize on the sale of that home if the house remained community property because that community asset was clearly going to be property of the estate. So they, with instruction, advice, and counsel, came up with the idea of partitioning the property to keep out the wife's interest in the homestead property and keep it out of the bankruptcy estate and let her keep those proceeds. So 522P does come into play from that standpoint because they knew the consequence of 522P when they were considering what options they had to protect that interest. See, that comes back to my question to you where you said we look only to the debtor's intent on this partition, but the wife was also involved in this. She wanted her money. I understand, Your Honor. He had some intent to help his wife to get her money out of there before, you know, the creditors descended. I'm not in this. I mean, if it was as simple as you posit it, that we look only to the debtor's intent, we wouldn't have needed a 70-or-something, 80-page opinion. Well, Your Honor, the statute provides for and only provides for what is the intent of the debtor. That's what the statute says. It doesn't state the actual intent of the debtor and the transferee. It's the intent of the debtor, and the intent of the debtor here was clearly to prevent the payment of his creditors' claims. The fact that he had a laudable purpose in doing so or a totally legitimate purpose in doing so outside of bankruptcy is not the issue. The issue is, did he, in entering into that agreement, intend to prevent his creditors from getting paid? He clearly did. Therefore, as a matter of statutory interpretation, this Court must find that the partition agreement is subject to avoidance and annulment. What if you assume he didn't care who got the money, either the wife or the creditors? It didn't matter to him. Your Honor, I think that in that circumstance, that would be a different kettle of fish because there would not then be the evidence of an intent to prevent his creditors from getting paid. But his testimony was, I did this. I entered into this agreement with the purpose and intent of preventing my creditors from getting paid out of what I thought was assets that should be protected, namely my wife's interest in the homestead. This partition agreement, does it say anything about, and I know it doesn't, but just for our recording, does it say anything about whatever value my wife obtains as a result of this partition, she will never use any of it for my benefit? I think there's no such language. No, of course not. Thank you. Thank you. Okay, Mr. Ponsky. Thank you, Your Honor. I want to address a couple of points made by Mr. Elmquist. On the hinder and delay issue, the point that I wanted to highlight very quickly is that this analysis of hinder and delay has never, to my knowledge, been applied to just a case where an exempt asset is transferred. And I think that's a really important distinction and issue in this case. There are other cases that this Court has ruled on on hinder and delay, for example, the Boyer case from a number of years ago, which dealt with bankruptcy planning. And that case dealt not with transfer of exempt assets to exempt assets or recharacterization of exempt assets to exempt assets, which we have in this case. But instead, in the Boyer case, it was a conversion of non-exempt assets that creditors would have been entitled to to exempt assets that creditors are not entitled to. In the Boyer case, for example, the debtor who was an anesthesiologist had taken money that he had and had transferred it into, he built a greenhouse at his home to make it part of the real estate that would be exempt. He took some of the cash that he had and he went on a trip with his family to Hawaii. And even in that case, this Court found that there were no violations that would have... Now, the Court looked at it on a hinder and delay analysis, but this Court, even under some pretty egregious facts, I think, in that case, found that there was no issue with respect to the fraudulent transfer. And that's the case where this Court came up with what is very colloquial but really helps the analysis. It's the pigs get fat, hogs get slaughtered analysis. It comes directly from that Boyer case. And my point is on hinder and delay, even in the cases like Boyer, where there are non-exempt assets being transferred into exempt assets, we're still using the discretion of a pigs get fat, hogs get slaughtered analysis. In this case, I think what Judge Jernigan did with the hinder and delay analysis is more akin to a strict liability type of an analysis than a discretionary analysis. In other words, she says that this transaction impeded or obstructed creditors, and therefore it's hinder and delay. And I think you could say that of so many things in every bankruptcy case. A debtor didn't pay a creditor. A check bounced. The debtor filing bankruptcy. Those are all things that obstruct and impede creditors, but they don't have the impact of losing a discharge or having a fraudulent transfer analysis. I really think this analysis is more akin to a strict liability offense. And this court has said that's not the way we look at these things. We look at it on a discretionary standpoint. But I do want to highlight, because I think it's really important in this case, that what was partitioned is an exempt asset before the partition to an exempt asset after the partition. I don't think there's anybody in this room that would dispute that the debtors could have gifted that house an hour before bankruptcy or a week before bankruptcy to their children or to the Red Cross and had no consequence to it at all because it was their exempt asset. Creditors were not entitled to that asset. And they could do with that asset whatever they wanted to. The fact that they partitioned it from community property to separate property shouldn't be any different than if they had given that property away an hour before bankruptcy. It was theirs. Creditors were not entitled to it. And it should have a different analysis. I want to go into one other point that was raised. And that is the Texas cases that are cited by Kim and I. And Mr. Elmquist talked about that quite a bit. And I wanted to give the court quickly what I view to be, because I only have a minute left, of what I piece together from these seven cases that I think are important. I'm going to have to do this very quickly. I think we get from the case Benchmark v. Crowder, which is a Texas Supreme Court case in the materials, that this homestead right is a separate right of each spouse. I think we get from the Hagen v. Pemilton Texas Supreme Court case the fact that this right is a prophylactic protective right, not a property right. I think we get from the Rogers, the United States v. Rogers, that this situation is analogous to a life estate. And that analogy has never been broken in the case law. It was followed by this court in Harris. And I think Harris is the most important and the most on-point case before this court in this analysis, the Harris case. In that case, we looked at this homestead right as a life estate. We valued it using the treasury regs. And we found that it had a particular type of a value. And then from Kim we learned that that life estate analogy is as applicable in the tax analysis, which was Harris v. Rogers, as it is in a bankruptcy setting. I think we put on the right evidence. There's no contravening evidence as to the value. And I'm going to ask the court if I may have just 30 seconds more. Go ahead. I'm asking that this case be reversed and rendered, not remanded. And if it's rendered on the basis of fraudulent transfer being reversed, that she be awarded $284,000, which would have been her half under the partition if it hadn't been avoided. And I'm going to ask that if it is reversed on the basis of the distribution issue, that she receive the amount that she's entitled to under the treasury regulation analysis as put forth by our expert. There was no evidence to the contrary. And I don't believe there's any reason to remand this case back to the bankruptcy court. Thank you. Thank you, Mr. Ponsky.